UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cr-00042-JRS-TAB |
| | ) | |
| HERMAN WESLEY TAVORN, | ) | -01 |
| | ) | |
| Defendant. | ) | |

### Order on Motion to Suppress

Herman Tavorn is charged with gun and drug crimes. (Indictment, ECF No. 18.) The underlying facts are simple: the police heard that Tavorn was dealing fentanyl out of his house in Indianapolis; after a few weeks of investigation, including three off-site controlled buys and some surveillance of Tavorn's comings and goings at the house, the police applied for a search warrant of the house, which a Marion County judge granted. Executing the warrant, the police found guns and drugs. Now before the Court is Tavorn's Motion to Suppress and Request for Evidentiary Hearing, (ECF No. 48), in which he argues that the warrant was invalid (and the police could not in good faith rely on it), because there was no reason to believe that evidence of drug dealing would be found at the house.

A valid warrant must be supported by "probable cause": that is, it requires "evidence showing a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Carswell*, 996 F.3d 785, 791 (7th Cir. 2021) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The issuing judge must make a "practical, commonsense decision," which includes "reasonable inferences

about where evidence is likely to be kept." *Id.* Probable cause does not require "certainty." *Id.* at 793. This Court defers to the issuing judge's probable cause determination if there is "substantial evidence in the record that supports [that judge's] decision." *United States v. Carroll*, 750 F.3d 700, 704 (7th Cir. 2014). And even if this Court concludes the warrant was not supported by probable cause, evidence from an invalid warrant is still admissible if the police relied on the warrant in good faith. *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

Here, the warrant-issuing judge had ample evidence to support his decision.

A warrant-issuing judge is permitted to infer that drug dealing evidence will be found "where the dealer lives." *United States v. Scott*, 731 F.3d 659, 665 (7th Cir. 2013). That is a fair inference here. Any "realistic and common sense" reading of the affidavit shows the police believed Tavorn lived at the house. *Koerth*, 312 F.3d at 867. (And any realistic appraisal of the underlying facts shows that is a reasonable belief.) The affidavit testifies the police "received information" that Tavorn "lived at 1239 Amelia Drive and was selling fentanyl from the house." (Affidavit 4, ECF No. 49-1.) The affidavit also details the steps in the police investigation, each of which ties Tavorn to the house. The police often saw Tavorn's car at the house, (*id.* at 4, 5, 6, 8); Tavorn checked the mail there, (*id.* at 5); Tavorn came from and returned to the house for two of the three controlled buys, (*id.* at 6, 11); and a daylong surveillance of the house showed Tavorn coming and going freely, by both the front and back doors, without anyone letting him in, (*id.* at 8–10). A drug buyer, later turned cooperator,

2

told the police that his dealer "Wes"—Tavorn's middle name—lived in a subdivision behind Goodwill, a description that matches the house in question. (*Id.* at 5.) Finally, there is nothing in the affidavit tending to link the house to another person or to link Tavorn to another place.

Even if the warrant-issuing judge could not fairly conclude that Tavorn lived at the house, the affidavit gave him reasonable grounds to think evidence of Tavorn's alleged drug dealing would be found there. This evidence overlaps with the former: the affiant testifies that Tavorn came from and returned to the house for two of the three controlled buys, (*id.* at 6, 11), and the affiant testifies that Tavorn was seen leaving the house on foot to proceed to other, uncontrolled deals, (*id.* at 9). The police began their investigation with the report that Tavorn was dealing drugs out of the house, and a cooperating drug buyer gave information to the same effect. (*Id.* at 4, 5.) Any "practical, commonsense" look at the affidavit, *Carswell*, 996 F.3d at 791, suggests that Tavorn was storing drugs or drug money at the house. Where else would his inventory be, if not there? It could not be in the car because he sometimes left the house on foot to do deals. And it strains credulity to think he carried all his alleged drugs and money on his person. The warrant-issuing judge did not need to know beyond all metaphysical doubt that there would be drugs in the house; he needed only a "fair probability," *id.*, which the affidavit gave him.

In this latter prong of the analysis, the Court follows the Seventh Circuit's lead in *United States v. Yarber*, 915 F.3d 1103 (7th Cir. 2019). There, the court upheld a warrant that authorized the police to search an apartment—the defendant's

3

girlfriend's—even though the affidavit did not claim the defendant lived there. *Id.* at 1105–06. In fact, the affidavit indicated that the defendant had a different house. But, the court said, the affidavit showed the defendant had used the girlfriend's car for four separate drug deals, and twice he drove directly to the apartment afterward. *Id.* On that record, the court concluded, it was fair for the warrant-issuing judge to have believed drug crime evidence would be found at the apartment. *Id.*

Here, of course, there is no other house and the Court believes the affidavit does attest Tavorn lived at the house in question. But *Yarber* shows repeated contacts between a defendant, his alleged drug crimes, and a given place are enough to support a finding of probable cause even when that place is not "where the defendant lives." *Id.* at 1106. ("[Not] any place to which a suspected drug dealer travels after a drug sale is subject to a search. But there is much more here than an isolated visit to some random apartment after a drug sale."). And if two post-deal visits to an apartment, plus routine use of a particular car, are enough to tie the defendant and his alleged drugs to a place, as in *Yarber*, then surely direct coming and going from two controlled buys, repeated use of a car and garage, the information from one, perhaps two informants, and various uncontrolled buys all together amount to the necessary connection.

Finally, even if the warrant-issuing judge erred in finding probable cause to search the house (which possibility this Court thinks remote), the police relied on the warrant in good faith. *United States v. Orozco*, 576 F.3d 745, 750 (7th Cir. 2009). Before attempting a search the police investigated and obtained a warrant—that is

4

evidence of their good faith to begin with. *Id.* To disprove it, Tavorn would have to show that the warrant process was corrupted by the officers or the judge—and there is no hint of that here—or that the affidavit was "so lacking in probable cause that no officer could have reasonably relied on it." *Id.* In other words, if the warrant turns out to have issued erroneously, lacking probable cause, the police are entitled to rely on it if it was a close call. The Court thinks this warrant is quite safely within bounds—but even if the Court is wrong it is not completely wrong. That would make the call a close one and show the police reliance justified.

There is no reason to hold an evidentiary hearing on this motion. Tavorn proffers no specific evidence or allegations that would change the Court's analysis; instead, he offers quibbles and remotely possible alternate explanations. *See United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004) (standard for holding evidentiary hearing). The warrant-issuing judge, evaluating probable cause, deals in "probabilities," not certainties, *Gates*, 462 U.S. at 231, and those probabilities were well on his side here.

Tavorn's Motion to Suppress and Request for Evidentiary Hearing, (ECF No. 48), is **denied.**

**SO ORDERED.**

Date: 05/13/2024

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Bradley A. Blackington
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
bradley.blackington@usdoj.gov

Kelsey Massa
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kelsey.massa@usdoj.gov

Stacy R. Uliana
ULIANA LAW
stacy@ulianalaw.com